The opinion of the Court was delivered by
Wardlaw, Ch.
Samuel R. Gillison in his lifetime, July 1, 1843, executed his bond to plaintiffs as assignees of McNeil & Blair, bankrupts, with condition for the payment of $682.18, with interest thereon payable annually, in five equal annual instalments beginning July 1, 1844. He paid punctually the first four instalments and interest accrued, and died in the latter portion of 1847, leaving the fifth instalment payable July 1, 1848, and the interest thereon, outstanding and unpaid. His representatives have failed to pay this instalment. At his death he left a considerable estate, which he disposed of by will among his wife and children. Bis executor, Thomas S. *436 Gillison, assumed his trust September 14, 1847, and after partial administration himself died intestate in 1849. Soon afterwards, Robert G. Norton, Ordinary of Beaufort district under the statutes of the State then existing, assumed the administration of the estates of both testator and executor as derelict estates. Robert G. Norton, as administrator of the estate of Samuel R. Gillison, filed his bill in this Court January 10, 1850, against the creditors and legatees of his testator, for the instruction of the Court as to his administration, for the marshalling of the assets of his testator, and for partition of the residue of the estate among the legatees, after the payment of debts; and the Court ordered and decreed, at February sitting 1850, that the creditors of the testator should be called in by the usual procedure to present and prove their demands, that the official administrator should sell so much of his testator’s estate as was necessary for the payment of testator’s debts — that the residue should be divided among the legatees of testator according to the provisions of his will, and that the official administrator should account before the Commissioner for his administration of both estates. In pursuance of this decree all of the creditors of testator, except the plaintiffs, presented and proved their demands, and have been fully paid and satisfied, and the residue was distributed among the legatees, and in 1851 the Court by its decree confirmed the payment and distribution. Some.six years after the legatees of S. R. Gillison received their respective legacies for separate and exclusive enjoyment (the precise date does not appear by the brief,) the plaintiffs filed this bill against the legatees for satisfaction of the balance in arrear on the bond of testator; and the defendants who have answered plead the statute of limitations. The Chancellor on Circuit sustained this plea. No excuse whatever is offered in the pleadings or evidence for the neglect of the plaintiffs to present and prove their demand, when the Court by its wholesome and approved procedure undertook the administration of the assets of testator; but it is stated at the bar in this Court, although no such matter was *437 suggested on Circuit, that while the plaintiffs had notice of the action of the Court in the administration of S. R. Gillison’s estate, they did not present their demand because their bond was mislaid or lost until a date shortly before filing the bill. If this fact were regarded as a sufficient excuse for the laches of plaintiffs it should have been stated in the bill and proved; and it is too late now to found on such statement an application for leave to amend the bill when no such motion is intimated by the appeal. In truth the Court can scarcely ever act safely on oral statements at the bar, outside of the pleadings and evidence, whatever may be their confidence as men in the veracity of their professional brethren. All sound judgments must rest on the pleadings and evidence — on matters appearing judicially. Granting, however, that this excuse had been stated and proved, it seems to us inadequate. If the bond were lost the plaintiffs could still have established their demand on proof of the existsnce and loss of their bond, and, at the least, on any probable evidence of their claim, they might have obtained from the Court a provisional order, that a fund sufficient for satisfaction of it should be reserved within the control of the Court, for a reasonable time, until fuller proof could be furnished.
' The plaintiffs appeal from the decree on the single ground that as the demand of the plaintiffs is on a specialty debt the plea of the statute of limitations does not apply.
This ground exhibits some misconception of the effect of the decree. The Chancellor never intended to determine that a bond, which is not at all within the statute of limitations should, by resistance of payment for four years, be extinguished, or, as it was expressed in argument, that the seal should be erased from the contract of the parties. He simply refused remedy in this Court to the plaintiffs, where the defendants had been more than four years in adverse possession of their legacies under the decree of the Court. The suit was not on the bond itself, and such suit could be properly prosecuted only in the Law Court; and the statute was applied,not *438 to the bond, which is intact, the plaintiffs being left to prosecute their redress elsewhere under the statute of William and Mary, or otherwise, as they may be advised; but it was applied to the remedy sought in this Court. It was considered that legatees in exclusive possession of their legacies for four years under decree of the Court, were entitled to be protected from any peculiar remedy of the Court against them on a mere equity. Their liability is not by bond, and arises only from their possession of estate as volunteers, which, in the hands of their testator, was liable for the payment of his debts before his donations could take efiect. If it can be said with technical accuracy that they hold their legacies under trust, the trust is merely implied and liable to the bar of the statute of limitations. It seems to me, however, that the sounder view is to consider their liability as arising from the doctrine of the common law as to indebitatus assumpsit, for money had and received to the use of another. The result of both views is the same. It is waste of labor to reason discursively on a point which is fully concluded by the authorities. In Buchan vs. James, Speers, Eq. 382, it is said and adjudged. The well established doctrines of this Court, based on the authority of the English Chancery, is, that the statute of limitations will bar a demand arising out of a trust raised by implication of law. If one receive money or goods of another, believing that they belonged to himself, when in fact ex equo et bono they belonged to a stranger, that is an implied trust, and the stranger is entitled to recover, but he may be barred by the statute. Defendants were distributees of the intestate, and distribution had been made more than four years and less than twenty before filing the bill; and distributees or legatees are protected by the statute of limitations against creditors or other claimants, unless they file their bills within four years after distribution. So in Miller vs. Mitchell, Bail. Eq. 411, it is said, “ where there has been an adverse possession and no trust or fraud, time will always bar in analogy to the statute. The demand of the creditor against the legatees, *439 is a mere personal demand for money, and the same provision will apply that would bar such a demand at law.” The same doctrine is recognized in the following cases: Massey vs. Massey, 2 Hill, Ch. 496; Alexander vs. Williams, 2 Hill, 522 ; Fisher vs. Tucker, 1 McC. Ch. 176 ; Beckford vs. Wade, 17 Ves. 97 ; Andrew vs. Wingley, 4 Bro. C. C. 425; Townshend vs. Townshend, 1 Bro. C. C. 544.
While we thus give effect to the plea of the statute of limitations, we must not be understood as disparaging the effect of the decree for distribution as in itself a bar, without the aid of lapse of time. It is not necessary in this case to .discuss this point, and I content myself with stating my impression unenlightened by argument, that whenever the funds to be administered have passed by its decree from the control of the Court, they are beyond the reach of any claimant until by direct application for this purpose, the decree be vacated or modified for the benefit of the claimant In the statement of the case, I spoke of the procedure of the Court in calling 'in the creditors of an embarrassed estate and supervising-its administration, as wholesome and approved. The last epithet may not be strictly accurate, for we do sometimes hear at the bar that this procedure is indigenous and not authorized by the practice of Westminster Hall. To most minds our practice is sufficiently vindicated by the remarks in Thomson vs. Palmer, 2 Rich. Eq. 32; and really it would seem at this day, after the long establishment of the Court of Equity in this State; that our deliberate departure from the principles or practice of the English Chancery should be regarded as authoritative, and establishing, if it is necessary to be so considered, a new and peculiar system of equity for the State. But to those who contemn home productions, it may be satisfactory to quote what is said by an eminent English elementary writer as to the English practice. Mr. Adams, in his introduction to his treatise on the doctrine of equity, p. 55,says: “ The manner of administration in equity is on a bill filed either by creditors or by legatees, praying to have the accounts *440 taken and the property administered; or if no creditor or legatee is willing to sue, then by the executor himself, who can only obtain complete exoneration by having his accounts passed in Chancery. The personalty is secured by payment into Court; a receiver of the real estate and of the outstanding personalty is appointed, if the circumstances require it, and a decree is made for taking the accounts; all actions by creditors are stayed; advertisements are issued for claimants to come in, and the funds are ultimately distributed by the Court so as to protect the representatives from subsequent liability.”
Our practice in this State is precisely conformable to what Mr. Adams declares to be the English practice.
It is ordered and decreed that the Circuit decree be affirmed and the appeal dismissed.
Johnston and Donkin, C.C., concurred.

Appeal dismissed.